**\*NOT FOR PUBLICATON\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM S. KATCHEN,<br><br>                Appellant,<br><br>v.<br><br>TIMOTHY P. NEUMANN, et. al.,<br><br>                Appellees.<br><br>IN RE AMERICAN CENTER FOR CIVIL JUSTICE, INC.,<br><br>                Debtor. | Civil Action No. 3:20-cv-06333-FLW<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

William S. Katchen appeals an Order from the United States Bankruptcy Court for the District of New Jersey ("USBC") rejecting his application for a substantial contribution award. From July 7, 2018, to August 8, 2018, Katchen defended Religious Liberty & Tolerance, Inc. ("RLT"), the largest scheduled creditor of American Center for Civil Justice, Inc. ("ACCJ"), against a challenge to the validity of RLT's $14.8 million claim against ACCJ's estate. Katchen argues that the USBC erred by ruling that his services did not substantially benefit ACCJ. RLT, ACCJ, and the United States Trustee all oppose. For the following reasons, the USBC's Order is **AFFIRMED** and Katchen's appeal is **DENIED**.

    **I.**      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    *A. Chapter 11 Events Giving Rise to Katchen's Application for a Substantial Contribution Award*

1

Debtor in the underlying bankruptcy proceeding is ACCJ, a nonprofit corporation that "locates and assists the victims . . . of state sponsored terrorism in pursuing claims for civil damages against governments and their agents that have perpetrated and abetted terrorism." *See* Case No. 18-15691, ECF No. 239, at 8. ACCJ "undertakes to retain counsel at [its own] expense" to pursue litigation for victims, who then donate back a percentage of their recovery. ACCJ's president is Eliezer Perr. RLT, a nonprofit with a similar mission, is ACCJ's largest scheduled creditor. RLT holds a $14.8 million claim against ACCJ pursuant to a 2007 agreement. RLT's president is Jedidiah Perr. *Id.*, ECF No. 26, 29.

ACCJ filed a Chapter 11 petition on March 23, 2018, to stay state court litigation, which clients initiated because they were dissatisfied with how ACCJ disbursed funds. *Id.*, ECF No. 239, at 9. On June 6, 2018, these litigants filed a motion in ACCJ's Chapter 11 case objecting to the validity of RLT's $14.8 million claim. *See id.*, ECF No. 79. The motion sought relief from RLT, not ACCJ. *Id.* RLT retained Katchen to oppose the motion. *See* UST Br., at A293-94. Katchen provided RLT with an "Engagement Letter" on July 11, 2018, which "describe[d] the terms and scope of [the] engagement" as relating solely to defending RLT's claim. The Engagement Letter also stated that Katchen would file "quarterly fee Applications with the Court pursuant to 11 U.S.C. § 503(b)(4)," and would bill RLT for his services. *Id.* at A293. Katchen represented RLT from July 7, 2018, to August 8, 2018.

On August 12, 2018, RLT filed its own Chapter 11 petition. *See* Case No. 18-26095, ECF No. 1. RLT again sought to retain Katchen. *Id.*, ECF No. 10. The Trustee opposed RLT's request, arguing that Katchen was not a "disinterested person" because RLT paid him $97,734 for his prior work. *Id.*, ECF No. 26. The Trustee dropped its challenge when RLT agreed to add the following language to its "Retention Order" employing Katchen:

2

> [Katchen] shall waive any and all pre-petition claims against [RLT], and return to [RLT]'s estate the sum of $97,734.00 from [his] Attorney Trust Account. Notwithstanding any such waiver, [Katchen] shall retain the right to file an 11 U.S.C. § 503(b)(4) claim against [ACCJ].

*See* UST Br., at A218.

Katchen represented RLT until October 2018, when he withdrew due to a health issue. *See* Case No. 18-26095, at ECF No. 62, 72, 118. During the course of this representation, he earned $102,380.80 in fees. *Id.* at ECF No. 77. The USBC then awarded Katchen an additional $164,100. *Id.*, ECF No. 163, 168, 174. RLT appealed, and I remanded for additional fact-finding. *See Am. Ctr. for Civ. Just., Religious Liberty & Tolerance, Inc. v. Katchen*, No. 19-18115, 2020 WL 4060178 (D.N.J. July 20, 2020).

B. *Katchen's Application for a Substantial Contribution Award in ACCJ's Case*

On April 8, 2020, Katchen filed an Application in ACCJ's Chapter 11 case seeking a substantial contribution award for all pre-petition services rendered to RLT. *See* UST Br., at A219-93. Specifically, Katchen requested $97,734 for defending RLT's $14.8 million claim against fraud allegations, notwithstanding the fact that he "performed [this work] as counsel for RLT," "billed [] RLT," expected to be compensated by RLT, and intended to preserve RLT's right to payment. *See* UST Br., at A222-25. Nevertheless, according to Katchen, his representation benefitted ACCJ because ACCJ had a joint defense strategy with RLT, *see* UST Br., at A220, ¶¶ 3-5, it furthered ACCJ's reorganization plans, *id.* at A224-26, ¶¶ 26, 32, and the Retention Order not only permitted such an award but operated as *res judicata* or "judicial estoppel" on Appellees' objections. *Id.* at A223-24, ¶ 25. Katchen submitted his time records for support. *Id.* at A227-37. Both the ACCJ and the Trustee opposed on various grounds. *See id.* at 11-13 (summarizing arguments). RLT also objected on the grounds that "[a]ll of the work performed by Mr. Katchen

3

was in defense of the RLT claim" and "[a]nything else would have been outside the scope of the retention contract." *See id.* at A287-97, ¶ 9.

### C. The USBC's Order Denying Katchen's Application

The USBC held a hearing on Katchen's Application on May 12, 2020. *See* UST Br., at A312-46. Katchen insisted during the hearing that his "180 discrete [legal] services were [at least] for the joint benefit of both Debtors." *Id.* at A326, T15:13-15. The USBC disagreed. *Id.* at A327, T16:4-7. Despite the entities' shared interest in defending the validity of RLT's claim and the 2007 agreement giving rise to it, *id.* at A238, T17:20-21, the USBC ruled that any benefit to ACCJ was incidental to Katchen's services for RLT. *Id.* at A329, T18:1-6. The USBC also ruled that a fee award would be "contrary to the intent" of the Retention Order. *Id.* at A328, T17:9-11. In the USBC's view, it would harm RLT to require Katchen to waive pre-petition fees from RLT but allow him to collect the same from ACCJ, thereby reducing the amount available to RLT as creditor. *Id.* at T17:12-17. The USBC entered two Orders denying Katchen's Application, from which Katchen appeals. *Id.* at A347-50.

### D. The Present Appeal

Katchen's arguments on appeal are unnecessarily lengthy, so I recount them here only briefly. Katchen posits that: (1) ACCJ directed his services rather than RLT; (2) ACCJ and RLT had a "unity of interest" such that his services were always meant to benefit both entities; (3) he always expected to be paid from ACCJ's estate; (4) certain results obtained in ACCJ's case demonstrate a substantial benefit; (5) the federal bankruptcy statute providing for fee awards is more flexible than how the USBC applied it; (6) the Retention Order bars RLT and ACCJ from objecting to any future fee requests; (7) the USBC failed to conduct "a full evidentiary hearing" on his Application; (8) an email not submitted into evidence in the bankruptcy proceedings proves

4

that ACCJ substantially benefited from his services; (9) RLT and ACCJ misrepresented facts to the USBC; and, finally, (10) "equity and fairness" dictate reversing the USBC's Order. *See generally* App. Br., at 2-14.

ACCJ and the Trustee oppose Katchen's appeal. Their argument is the same now as it was below: "RLT retained Mr. Katchen for its own benefit in pursuing a $14.8 million claim against ACCJ's estate, an objective which obviously is not a benefit to ACCJ. To the extent Mr. Katchen's services included defending against fraud claims that might undermine RLT's $14.8 claim against ACCJ, Mr. Katchen would have provided those services regardless of any benefit to ACCJ and any benefit to ACCJ was merely incidental. And to the extent Mr. Katchen provided other services, they were outside the scope of his retention by RLT." *See* UST Br., at 17-18.

## II.   LEGAL STANDARD

The USBC had original jurisdiction over this matter. *See* 28 U.S.C. §§ 157(a)-(b). The USBC's Order dated May 12, 2020, denying Katchen's Application for a substantial contribution award is final and appealable. *See Delightful Music Ltd. v. Taylor (In re Taylor)*, 913 F.2d 102, 104 (3d Cir. 1990) (holding that an order is final and appealable if it "fully and finally resolved a discrete set of issues, leaving no related issues for later determination"). Katchen filed a timely notice of appeal. *See* 28 U.S.C. § 158(c)(2); Fed. R. Bankr. P. 8002. This Court has appellate jurisdiction over it. *See* 28 U.S.C. § 158(a)(1).

I review the USBC's legal conclusions *de novo*, but its factual findings "only for clear error—in other words, with a serious thumb on the scale for the bankruptcy court." *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018). "Whether a creditor has made a substantial contribution within the meaning of [11 U.S.C.] § 503(b)(3)(D) is a question of fact, and it is the bankruptcy court that is in the best position to

5

perform the necessary fact finding task." *In re Tropicana Ent. LLC*, 498 Fed. App'x. 150, 152 n.3 (3d Cir. 2012) (quotations omitted).

A factual finding is clearly erroneous if it "either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) (quotations omitted). "If the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

Hence, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574; *see also Gessman v. United States (In re Applied Paging Techs., Inc.)*, 250 B.R. 496, 499 (D.N.J. 2000) ("[A] mere difference [of] opinion regarding the resolution of a factual issue will not permit reversal under the clearly erroneous standard."). "This is so even when the [bankruptcy] court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Anderson*, 470 U.S. at 574. And I may affirm "for any reason supported by the record," even one on which the USBC did not rely. *See Otto v. Pa. State Educ. Ass'n-NEA*, 330 F.3d 125, 140 n.17 (3d Cir. 2003).

### III. DISCUSSION

#### A. Scheme for Approving Substantial Contribution Awards

A Chapter 11 debtor must obtain permission from the USBC to retain an attorney. *See* 11 U.S.C. § 327(a); Fed. R. Bankr. P. 2014(a). The attorney may "not hold or represent an interest adverse to the estate," and must be a "disinterested person[]." *Id.* The USBC approves all fee

awards, and will only do so if reasonable. *See id.* §§ 329(b)(1), 330(a). Chapter 11 attorneys must comply with various disclosure requirements regarding their fees. *Id.* § 329(a); Fed. R. Bankr. P. 2016(b). Usually, parties-in-interest in bankruptcy bear their own fees. Under 11 U.S.C. § 503(b)(3)(D), however, a creditor may recover from a debtor's estate any "actual, necessary expenses . . . incurred . . . in making a substantial contribution" to the debtor's case. *Id.* A creditor's attorney can, in turn, recover "compensation for professional services rendered" to a creditor as long as the creditor's expenses are themselves "allowable under [11 U.S.C. § 503(b)(3)(D)]." *See* 11 U.S.C. § 503(b)(4). Reimbursement is limited to the "actual, necessary expenses incurred by such attorney." *Id.*

Courts "strictly" construe §§ 503(b)(3)(D) and (b)(4). *In re RS Legacy Corp.*, No. 15-10197, 2016 WL 1084400, at *3 (Bankr. D. Del. Mar. 17, 2016). To justify a fee award, an attorney must show by a preponderance of the evidence that he "made a substantial contribution to the [debtor's] estate." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 943 (3d Cir. 1994); *Calpine Corp. v. O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999) (holding burden of proof is on administrative expense claimant). A substantial contribution is one that "result[s] in an actual and demonstrable benefit" to the estate on the whole. *Id.* "Services which substantially contribute to a case are those which foster and enhance the progress of reorganization." *Id.* at 944. "The substantial contribution test is applied in hindsight, and scrutinizes the actual benefit to the case." *Leidos Eng'g, LLC v. KiOR, Inc. (In re KiOR Inc.)*, 567 B.R. 451, 458 (D. Del. 2017). The attorney must also show a causal connection "between the services rendered on behalf of its creditor-client and [the] actual and demonstrable benefit" to the debtor. *Id.*

Finally, the benefit to the debtor's estate must not be merely incidental to actions taken in the creditor's own interest. *See Lebron*, 27 F.3d at 944 ("Inherent in the term 'substantial' is the

7

concept that the benefit received by the estate must be more than an incidental one."). Because courts presume that creditors prioritize "self-protection," actions which "would have been taken absent an expectation of reimbursement from the estate" are insufficient to prove a substantial benefit, *id.* at 946, and courts grant fee awards only in "rare and extraordinary circumstances" for that reason. *KiOR*, 567 B.R. at 459; *In re Columbia Gas Sys., Inc.*, 224 B.R. 540, 548 (Bankr. D. Del. 1998) (holding a creditor's actions must be "unusual" or "extraordinary" to justify an award).

B.  *The USBC Did Not Err in Rejecting Katchen's Application*[1]

The USBC did not err by ruling that Katchen did not make a substantial contribution to ACCJ's estate on the whole. To begin, Katchen does not explain what he contributed—as he must—other than help to defend fraud allegations levied against both RLT and ACCJ relating to the entities' 2007 agreement, the same contention he repeats on appeal and for which ACCJ had its own attorney. *Accord In re Worldwide Direct, Inc.*, 334 B.R. 112, 122 (Bankr. D. Del. 2005) (holding that services duplicative of other estate professionals are insufficient). Katchen submits his time records to prove his contribution, but such records alone are inadequate. *See In re Summit*

---

1   Even if Katchen satisfactorily showed that his services substantially contributed to ACCJ's estate, I would affirm the USBC's Order on the grounds that RLT is not obligated to pay for Katchen's pre-petition services under the parties' Retention Order, in which Katchen waived his right to payment. *See* UST Br., at A218. Courts have denied an attorney's substantial contribution application where the creditor has not actually "incurred an obligation to pay [the attorney] for his fees and expenses," given that a creditor's obligation under 11 U.S.C. § 503(b)(3)(D) is "the threshold eligibility requirement for seeking compensation" under 11 U.S.C. § 503(b)(4). *Cmty. Home*, 571 B.R. at 725; *see also Olsen v. Robinson Brog Leinwand Greene Genovese & Gluck P.C. (In re Olsen)* 334 B.R. 104, 107 (S.D.N.Y. 2005) ("[T]he statute contemplates that the fees covered by subsection (b)(4), like those costs covered by subsection (b)(3), will have been 'incurred by' a creditor."); *In re Garcia*, No. 12-93049, 2016 WL 7324153 at *6 (Bankr. E.D. Cal. Dec. 14, 2016) ("[T]his court does not concur to a blanket proposition that there never needs to be a client who has an obligation to pay the attorney's fees and costs . . . . 503(b)(4) was not enacted as an attorneys' fee free-for-all provision."); *RS Legacy Corp.*, 2016 WL 1084400, at *3 ("Allowance of attorneys' fees under section 503(b)(4) is . . . contingent upon establishing a claim under subsection 503(b)(3)(D)."). This follows from the language of the statutory provision at issue, which authorizes payment to a creditor only to the extent that the creditor is actually required to pay for such services. *See* 11 U.S.C. § 503(b)(3)(D); *Lebron*, 27 F.3d at 946-47 & n.5. In short, because RLT is under no obligation to pay Katchen for the pre-petition services he now seeks from ACCJ due to Katchen's waiver, RLT does not appear to be an "entity whose expense is allowable" under 503(b)(3)(D) in the first instance.

8

*Metals, Inc.*, 379 B.R. 40, 53 (Bankr. D. Del. 2007) ("[E]xtensive participation in a case, without more, is insufficient."); *In re Energy Future Holdings Corp.*, No. 14-10979, 2019 WL 366216, at *2 (D. Del. Jan. 30, 2019) (affirming denial of substantial contribution award where applicant "submitted no evidence" beyond "fee records"). Moreover, Katchen's contributions are different in kind from contributions on the basis of which others courts have approved awards. *See e.g., In re Essential Therapeutics, Inc.*, 308 B.R. 170, 176 (Bankr. D. Del. 2004) (finding substantial contribution where applicant drafted key plan provisions and prepared necessary corporate documents for debtor, lessening the burden on debtor's professionals); *In re AM Int'l, Inc.*, 203 B.R. 898 (D. Del. 1996) (finding substantial contribution because negotiations allowed other creditors to be paid in full); *In re Jelinek*, 153 B.R. 279 (Bankr. D.N.D. 1993) (finding substantial contribution where creditor's attorney proposed plan and acted as counsel for plan's liquidating agent, and without his work, liquidating plan never would have been proposed nor creditors paid); *In re 9085 E. Mineral Office Bldg., Ltd.*, 119 B.R. 246 (Bankr. D. Colo. 1990) (finding substantial contribution by creditor whose plan and willingness to compromise its own claim allowed full payment to all creditors, whereas debtor's plan provided for only token distribution to creditors).

Besides time records, Katchen supports his Application by asserting—in conclusory fashion—that he was highly involved in ACCJ's Chapter 11 petition. This, too, is far from a sufficient basis to sustain a substantial contribution award. *See, e.g.*, *In re Buckhead Am. Corp.*, 161 B.R. 11, 15 (Bankr. D. Del. 1993) (holding that "something more than self-serving statements" are required). Katchen is required to—but did not—submit evidence such as "[c]orroborating testimony by a *disinterested* . . . party attesting to [his] instrumental acts," which "has proven to be a decisive factor" before in "awarding compensation to activities" not typically considered

substantial benefits. *Summit Metals*, 379 B.R. at 53 n.6; *In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989).

The record further supports the USBC's determination that Katchen fails to meaningfully rebut the presumption of self-interest, and that RLT would have retained Katchen in any case. *See* UST Br., A327-28, T16:21-17:1; A329, T18:1-6. To rebut the presumption, Katchen must offer "something more than self-serving statements regarding one's involvement," *Buckhead*, 161 B.R. at 15, such as "evidence that [his] actions were undertaken on behalf of general unsecured creditors." *In re KiOR*, 567 B.R. at 461. Not only does he fail to do so—*e.g.*, his time records show no consultation with other creditors—but the evidence cuts the other way. For instance, RLT's president, Jedidiah Perr, attests that "[t]here was no benefit to ACCJ – and certainly no substantial benefit – from the work [Katchen] did for RLT." *See* UST Br., at A289, ¶ 9. Perr also attests that "[n]one of the services rendered by Mr. Katchen on behalf of RLT fostered or enhanced the progress of the ACCJ reorganization. Mr. Katchen's services produced no actual and demonstrable benefit to the ACCJ." *Id.* at A290, ¶ 19. Most significantly, Perr attests that Katchen "performed [all work] as counsel for RLT," "billed [] RLT," sought to be compensated by RLT, and intended to preserve RLT's right to payment under the 2007 agreement. *See* UST Br., at A222-25. Tellingly, by its terms, Katchen's Engagement Letter limits the scope of his representation to defending RLT's claim and expresses no expectation of payment from ACCJ.

Finally, based on the record before the USBC, Katchen fails to show a causal connection between his services and any benefit to ACCJ. The only evidence Katchen submits to this end is ACCJ's original reorganization plan, which includes a "statutory merger of both ACCJ and RLT estates." *See* UST Br., at A224, ¶ 26. The USBC was well within its authority to discount the value of this plan for at least three reasons: the parties still have not confirmed it, ACCJ proposed it over

10

a year and a half after Katchen withdrew from representing RLT, and Katchen never explains how defending RLT's $14.8 million claim would logically lead ACCJ to merge with RLT, or how the merger provision would logically trace back to his services. *Accord KiOr*, 567 B.R. at 460 ("Given the dearth of evidence presented on the issue, the court cannot conclude that the Bankruptcy Court clearly erred in finding [the applicant] failed to carry its burden of proof."). Accordingly, the USBC did not err in denying Katchen's Application.

### C. Katchen's Arguments to the Contrary Are Unconvincing

Katchen offers a laundry list of reasons why the USBC erred, but none is sufficient to justify reversing the USBC's Order. First, Katchen claims that ACCJ directed "each service" he performed, despite his Engagement Letter with RLT. *See* App. Br., at 5-6, 9-11. Setting aside the fact that Katchen fails to corroborate this contention with evidence, if it is true that he worked for the debtor rather than his creditor-client, then his Application fails on its face. *See, e.g.*, *Gorski v. Eisen (In re Henricks Commerce Park, LLC)*, 313 Fed. App'x. 740, 742 (6th Cir. 2007) (affirming denial of substantial contribution award where creditor attorney worked "on behalf of" the debtor").

Second, Katchen claims a "unity of interest" between ACCJ and RLT, which purports to show that his services were always intended to benefit both entities. *See* App. Br., at 3, 5, 7, 11. The entities' shared interest was defending the 2007 agreement against fraud allegations, pursuant to which Katchen states that they entered a "Joint Defense Agreement." *Id.* at 2-3. Despite Katchen's insistence, there is no evidence of any such agreement in the record, and even if there were, Katchen does not explain why ACCJ would have been more than an incidental beneficiary. Third, Katchen claims that he expected to be paid from ACCJ's estate all along, *see* App. Br., at

11

8, 10-12, but this fails in view of the Engagement Letter, which explicitly provides that he would bill RLT and RLT would pay him. *See* UST Br., at A293-94.

Fourth, Katchen claims certain positive outcomes over the course of ACCJ's Chapter 11 case demonstrate his substantial benefits to the estate on the whole. He points to: (1) no adverse decisions against ACCJ so far, *see* App. Br., at 3, 8, 12; (2) ACCJ has remained a debtor in possession for two years, *id.* at 10; (3) ACCJ successfully reorganized and paid its creditors, *id.* at 10, 12, 13; and (4) RLT and ACCJ settled the state court challenge to RLT's claim. *Id.* at 12. This fails to withstand scrutiny because Katchen's pre-petition representation ended on August 8, 2018, long before any of these events occurred. Likewise, there is no merit to Katchen's position that an attorney's services cause a benefit to a debtor simply because the benefit comes anytime after the services. *See, e.g.*, *In re Granite Partners, L.P.*, 213 B.R. 440, 452 (Bank. S.D.N.Y. 1997) (denying substantial contribution award where argument merely "reason[ed] from sequence to consequence," as here). The cases Katchen cites for support all belie his appeal. *Cf. Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1337 (11th Cir. 2000) (granting request supported by affidavits and testimony of debtor and creditors' representatives); *In re Deval Corp.*, 592 B.R. 587, 595 (Bankr. E.D. Pa. 2018), *aff'd*, 601 B.R. 725 (E.D. Pa. 2019) (granting request supported by testimony); *In re Worldwide Direct, Inc.*, 334 B.R. 112, 122-24 (Bankr. D. Del. 2005) (granting request supported by evidence from a disinterested party); *Granite Partners*, 213 B.R. at 450-55 (granting request supported by chapter 11 trustee).

Fifth, Katchen insists that the USBC ignored critical "flexibility" in 11 U.S.C. § 503(b)(3)(D), yet he never explains precisely what this flexibility is or where to find it, and case law undermines his position. *See, e.g.*, *RS Legacy*, 2016 WL 1084400, at *3 (explaining that courts "strictly" construe § 503(b)(3)(D)); *KiOR*, 567 B.R. at 459 (explaining that courts grant fee awards

12

only in "rare and extraordinary circumstances"); *Columbia Gas*, 224 B.R. at 548 (explaining that a creditor's actions must be "unusual" or "extraordinary" to justify an award); *In re S&Y Enters., LLC*, 480 B.R. 452, 462 (Bankr. E.D.N.Y. 2012) (explaining that proving entitlement to an award is "exceedingly difficult").

Sixth, Katchen claims that I must reverse the USBC based on his Retention Order with RLT. *See* App. Br., at 2, 4. The problem is, Katchen can only reach this conclusion by mischaracterizing the terms of the Order, which only preserves his right to *apply* for pre-petition fees, not his right to *receive* them. *See* UST Br., at A218 ("Notwithstanding any such waiver, the Law Office of William S. Katchen, LLC shall retain the right to file an 11 U.S.C. § 503(b)(4) claim against [ACCJ]."). Katchen concedes as much in the proceedings below, making this argument particularly meritless. *See id.* at A320, T9:6-15.

Similarly, Katchen claims that *res judicata*, "judicial estoppel," and the law of the case doctrine foreclose any objection to his Application for pre-petition fees.[2] Preclusion, however, is inapplicable under these circumstances. *See, e.g.*, *Duhaney v. Att'y Gen.*, 621 F.3d 340, 347 (3d Cir. 2010) ("Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit."); *Delaware River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir. 2002) ("Stated broadly, issue preclusion prevents relitigation of the same issues in a later case."); *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) ("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation."). More to the point, the Retention Order by its terms does not answer the question whether Katchen is ultimately entitled to receive a substantial contribution award, but only whether

---

[2] Katchen also ignores the fact that the Trustee is statutorily authorized to object. *See* 11 U.S.C. § 307.

13

Katchen may apply for one, and nothing in the Order suggests that Katchen need not carry his burden when doing so.[3]

The remainder of Katchen's arguments fail for various reasons. Remand for a "full evidentiary hearing" is unnecessary because Katchen had a hearing and every opportunity to present evidence therein.[4] *See, e.g.*, *Ferguson v. Garden Ridge Corp.*, 399 B.R. 135, 139 (D. Del. 2008) (holding that an appellant who "fully participated in briefing" and had "an opportunity . . . to request an evidentiary hearing" had "waived any right he may have had to an evidentiary hearing"), *aff'd*, 286 Fed. App'x. 41 (3d Cir. 2010). Additionally, the USBC did not commit clear error by failing to consider an email Katchen never submitted into evidence and presents on appeal for the very first time.[5] *See, e.g.*, *Halvajian v. Bank of N.Y., N.A. (In re Halvajian)*, 216 B.R. 502, 509 (D.N.J. 1998) ("[T]his Court is limited to the record at the time the . . . decision was rendered."), *aff'd*, 168 F.3d 478 (3d Cir. 1998); *see also In re Summit Metals, Inc.*, 477 Fed. App'x. 18, 22 (3d Cir. 2012) ("At this stage of the appellate process, it is not our task to consider evidence that was apparently not before the Bankruptcy Court."); *In re Application of Adan*, 437 F3d 381, 388 n.3 (3d Cir. 2006) (denying request to expand appellate record to include emails not presented below). The email does not show that Katchen made a substantial contribution to ACCJ's estate

---

3       Given the USBC's "independent obligation to review [a fee application] to determine its merits," *Columbia Gas*, 224 B.R. at 553, and to "protect the estate, lest overreaching attorneys . . . drain it of wealth which by right should inure to the benefit of unsecured creditors," *In re Busy Beaver Bldg. Ctrs. Inc.*, 19 F.3d 833, 834 (3d Cir. 1994), it is unclear whether an agreement between the parties not to contest a fee award would carry the day, if it existed.

4       For instance, Katchen could have filed a certification containing documentary evidence or additional sworn statements. *See* DNJ L.B.R. 9013-1(a)(2). Or he could have requested authorization to present oral testimony. *See* DNJ L.B.R. 9013-3(e). The record shows that he did neither.

5       The email is from Katchen to ACCJ's attorney, Timothy P. Neumann, sent on June 22, 2018. In it, Katchen states that he "would agree to payment only to the extent awarded by Court pursuant to 11 U.S.C. § 503(b)(4) . . . and charge 80% of regular rates for services [ ] because [RLT] is a not for profit institution." Katchen also states that he "will prepare [an] engagement letter for Jed and Neal's review and execution" if the rates are "satisfactory." *See* App. Br., Ex. I.

in any event, but merely discusses Katchen's rates. Further, there is no merit to Katchen's claims that ACCJ or RLT acted in bad faith, "breached" the Engagement Letter, owe him an "Administrative Liability" under 28 U.S.C. § 959(a), or "must be held responsible" based on his "reliance interest."[6] App. Br., at 1-2, 8, 10-12, 14. Even if evidence supported these claims, it still would not obviate Katchen's burden to support his Application by a preponderance of evidence, which he did not do before the USBC and has not done here. Finally, "equity and fairness" will not "contravene[] a specific provision of the [Bankruptcy] Code." *Law v. Siegel*, 571 U.S. 415, 422 (2014).

## IV. CONCLUSION

For the foregoing reasons, the USBC's findings are not clearly erroneous, and thus, I **AFFIRM** the USBC's Order denying Katchen's Application for a substantial contribution award in ACCJ's Chapter 11 case and **DISMISS** Katchen's appeal.

**DATED**: April 27, 2021
/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

6     I also note that Katchen did not raise these issues below, and to that extent, waived them on appeal. *See, e.g.*, *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999) (holding that, to preserve a matter for appellate review, a party "must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits"); *DIRECTV, Inc. v. Seijas*, 508 F.3d 123, 125 n.1 (3d Cir. 2007) ("It is well established that arguments not raised before the District Court are waived on appeal.") *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."); G*arza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) (applying these rules to an application for fees in bankruptcy).